## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

LEISHA SMITH,  §
  §
    Plaintiff,  §
  §
v.  §    Civil Action No. _____
  §
LINCOLN LIFE ASSURANCE  §
COMPANY OF BOSTON,  §
  §
    Defendant.  §

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Leisha Smith and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiff, Leisha Smith (hereinafter "Plaintiff"), was at all relevant times, a resident of the City of Cleveland, County of Bradley, State of Tennessee.

7. Plaintiff alleges upon information and belief that Volkswagen Group of America Group Disability Income Policy (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

8. The Plan provides eligible employees with disability income protection as defined by the Plan.

9. Plaintiff alleges upon information and belief that Volkswagen Group of America (hereinafter "Volkswagen") is the Plan Sponsor and Plan Administrator of the long-term disability Plan.

10. Volkswagen and/or the Plan additionally maintained or contained other benefits and/or component plans under which Plaintiff may be entitled to benefits if found disabled under the long-term disability Plan.

11. Plaintiff alleges upon information and belief that Liberty Life Assurance Company of Boston initially managed the long-term disability Plan.

12. Effective September 1, 2019, Liberty Life Assurance Company of Boston changed its name to Lincoln Life Assurance Company of Boston (hereinafter "Lincoln"); accordingly, Lincoln is the named Defendant in this Complaint.

13. Lincoln is the party obligated to pay benefits and to determine eligibility for benefits under the Plan.

14. Lincoln is the underwriter for Group Policy Number GF3-850-290468-01.

15. Lincoln is an insurance company authorized to transact the business of insurance in this State, and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-

1131, or at its headquarters located at 175 Berkley Street, Boston Massachusetts, 02116.

## FACTS

16. Defendant Lincoln was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

17. The long-term disability Plan is fully insured by Lincoln under Group Policy Number GF3-850-290468-01.

18. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and Lincoln issued its final denial on January 11, 2020.

19. The Plaintiff was employed as a paint quality control inspector for Volkswagen since 2011, at its location in the City of Chattanooga, County of Hamilton, State of Tennessee, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

20. The Plaintiff ceased work on or about February 16, 2018, due to a disability while covered under the Plan.

21. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

22. In accordance with the review procedures set forth in the Plan, 29 U.S.C. §

1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

23. Having submitted her appeal, and as confirmed by Lincoln, Plaintiff exhausted her administrative remedies.

24. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

25. Plaintiff is entitled to long term disability benefits as she has met the long-term disability Plan's requirements, and her disability continues to prevent her from performing the material and substantial duties of her own occupation and from performing, with reasonable continuity, the material and substantial duties of any occupation.

26. If disabled pursuant to the terms of the policy, Plaintiff, who was paid disability benefits from August 17, 2018 to August 16, 2019, is entitled to a monthly gross long-term disability benefit of $2,329.60 offset by a Social Security disability benefit of $1,177.00 (there are no auxiliary beneficiaries) for a net monthly long-term disability benefit of $1,152.60 from August 17, 2019 to March 21, 2027, such that she is entitled to $15,964.35 in back benefits, $81,113.96 in future benefits (using 3.00% to discount to net present value) minus an overpayment of $8,871.33, for a total long-term disability benefit of $88,206.90.

27. Evidence submitted by Plaintiff to Lincoln supporting her disability includes, *inter alia*, the following: medical records and/or medical opinions from Lydia Speer, D.O., Patrick Koo, M.D., Matthew Higgins, M.D., Jason Dunn, M.D., Todd Fowler, M.D., Laurie Swaby, M.D., Rachel Moore, PT, Elizabeth Bardowski, APN, and Robert Stetson, M.D., along with a fully favorable decision from the Social Security Administration granting disability benefits, indicating the 58 year old Plaintiff suffers from Parkinson's Disease with tremors, incoordination, weakness, dizziness, gait impairment, along with cognitive issues relating to the use of Pramipexole to treat her Parkinson's disease, and the Plaintiff also suffers from rheumatoid arthritis, osteoarthritis, tearing of the anterosuperior left acetabular labrum with partial labral detachment anteriorly, bilateral hip muscle weakness, pelvic muscle wasting, degenerative disc disease and/or desiccation at L2-3, L3-4, L4-5 and L5-S1, Von Willebrand disease, Hepatitis C, stress incontinence, and third degree hemorrhoids with fissures,  with attendant chronic pain, weakness, incoordination, fatigue and diminished concentration and memory, all of which requires Plaintiff to take frequent and unpredictable rest breaks, causes chronic absenteeism during any work environment, and causes her to be off-task more than ten percent (10%) of any given workday.

28. Lincoln relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on her functionality without addressing her work reliability, consistency, substantial capacity and steady attendance.

29. Lincoln relied, *inter alia*, on third party vendors, including Dane Street (Steven Winkel, D.O., A. Kalman, D.O.) to conduct medical file reviews.

30. Dane Street enters into Administrative Service Agreements ("ASA") with insurers like Lincoln. In those ASA's, Dane Street promises that it can create Management Reports on a monthly and quarterly basis that lists information for short-term disability and long-term disability claims. The reports track data on activity, performance, and outcome, including the ultimate outcome of the medical record review. This permits insurers like Lincoln to have the ability to track the result of every claim in which it retains Dane Street to provide a medical record review.

31. Dane Street can also provide a list of medical record reviewers who have previously provided reviews for insurance companies. It sends these reports to insurers who can then identify "repeat players" who were instrumental in helping deny disability claims.

7

32. Dane Street's bias goes further. Courts have noted Dane Street's history of bias and that it is "known to render biased opinions on the ultimate issue of disability." This is done "to reduce benefit payouts, thereby satisfying their clients and resulting in increased profits for themselves." *Davidson v. Ascension Long-Term Disability Plan*, Case No. 4:17-cv-995 (E.D. Missouri, October 16, 2017).

33. Dane Street's lack of credibility can also be seen in the similarity in the language of its physician's reports; a court has called a similarity in language between four Dane Street physician reports "concerning" and a possible indication of procedural irregularity. *Heartsill v. Ascension Health Alliance*, Case No. 17-cv-00155 (E.D. Missouri, July 11, 2017).

34. In *Karen Jones v. Unum Life Insurance Company of America*, Case No. 1:19-at-00655 (N.D. Cal.) (Dkt. Nos. 1 and 1-1), evidence demonstrated that Dane Street altered a medical consultant's report to be presented to Unum in opposition to plaintiff Jones' claim for benefits.

35. The Plaintiff has now exhausted her required administrative remedies for her long-term disability benefits under the Plan pursuant to ERISA or such administrative remedies are deemed exhausted and/or her long-term disability benefits are deemed denied.

8

36. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

37. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

38. Defendant Lincoln was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

39. Defendant Lincoln allowed its concern over its own funds to influence its decision-making.

40. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

41. Lincoln's administrative process did not provide Plaintiff with a full and fair review; by way of example, Lincoln's denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Lincoln required in order to approve her continuing benefits.

42. The disability insurance policy does *not* provide Lincoln with discretionary authority.

43. At all times relative hereto, Lincoln has been operating under an inherent and structural conflict of interest because any monthly benefits paid to

Plaintiff are paid from Lincoln's own assets with each payment depleting those same assets.

44. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Lincoln is an ERISA fiduciary.

45. Under ERISA, a fiduciary must carry out its duties with respect to the plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

46. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 45 of this complaint.

47. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

48. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 47 of this complaint.

49. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or

10

continuation as well as that which tends to favor claim declination or termination.

50. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 49 of this complaint.

51. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

52. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 51 of this complaint.

53. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

54. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 53 of this complaint.

55. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

56. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 55 of this complaint.

57. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

58. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 57 of this complaint.

59. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

60. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 59 of this complaint.

61. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

62. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 61 of this complaint.

63. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

64. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 63 of this complaint.

65. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

66. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 65 of this complaint.

67. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

68. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 67 of this complaint.

**CAUSE OF ACTION**
**FOR PLAN BENEFITS AGAINST ALL DEFENDANTS**
**PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 68 as if fully stated herein and says further that:

69. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits in the event that Plaintiff became disabled as defined in the Plan.

70. Plaintiff is disabled under the terms of the Plan.

71. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

72. The decision to deny benefits was wrong under the terms of the Plan.

73. The decision to deny benefits and decision-making process were arbitrary and capricious.

13

74. The decision to deny benefits was not supported by substantial evidence in the record.

75. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

76. The appellate procedures did not provide the Plaintiff a full and fair review.

77. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

78. The Defendant violated the fiduciary duties owed to the Plaintiff.

79. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

80. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has

suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring Defendant to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. An Order requiring the Defendant and/or Plan to provide Plaintiff with any other benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this Court deems just and proper.

Dated this 15th day of October, 2020.

Respectfully submitted,

BY:    */s/D. Seth Holliday*

D. SETH HOLLIDAY
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com

*Attorneys for Plaintiff*